**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, ET. AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 11 CV 08946 |
| ELECTROLUX HOME PRODUCTS, INC., | ) ) | Honorable Harry D. Leinenweber |
| Defendant. | ) ) | |

### [CORRECTED] DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

To date, in response to State Farm's broad discovery requests, Electrolux has produced over 370,000 pages of documents. Nevertheless, State Farm's limited motion to compel, which concerns only three categories of documents, is rife with disingenuous protests that Electrolux has stonewalled in discovery. Stripped of these misleading distractions, State Farm's motion fails as a matter of law and fact in all respects.

State Farm improperly seeks discovery of two categories of Electrolux's protected work product prepared by its consulting experts. In addition, State Farm seeks to compel Electrolux to produce a document that State Farm asserts is held by a separate Australian corporation. State Farm erroneously posits that Electrolux has control over that document by virtue of the fact that the Australian company has the same corporate parent as Electrolux. State Farm is entitled to none of this material.

### I. STATE FARM IS NOT ENTITLED TO PRODUCTION OF ELECTROLUX'S WORK PRODUCT

State Farm seeks an order compelling Electrolux to produce materials that were generated as part of Electrolux's efforts to defend insurer subrogation claims, such as the claims at issue in

this consolidated action. First, State Farm seeks production of non-testifying experts' work product. In order to mount a defense, Electrolux hired these consulting experts to investigate potential subrogation claims *after, and in response to*, State Farm's notice of each such claim. Second, State Farm seeks production of the working papers of Dr. Trey Morrison, who Electrolux retained in 2002 in connection with its defense of subrogation claims alleging dryer defects such as State Farm's claims here.

### A. The Fire Scene Investigation Materials Are Working Papers of Electrolux's Consulting Experts and Are Not Discoverable

State Farm routinely and systematically brings subrogation claims against Electrolux. Electrolux, in turn, has developed a process for defending such subrogation claims. Electrolux's involvement begins when it first receives notice that an insurer may seek subrogation on account of an alleged dryer fire. At that point, Electrolux prepares to defend such likely litigation, including by hiring consulting experts to investigate the fire scene and the origin and cause of the fire. This investigation process is designed and executed to prepare Electrolux's defense.

These investigation materials of Electrolux's consulting experts are classic work product. *See* Fed. R. Civ. P. 26(b)(3) (restricting discovery of materials "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"); *Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086, 2003 U.S. Dist. LEXIS 17789, at **4, 7 (N.D. Ill. Oct. 6, 2003) (if consultants are retained to assist defendant in an ongoing investigation, "[t]here can be no serious dispute that these consultants were retained in anticipation of litigation" and that their work is immune from discovery); *Binks Mfg. Co. v. National Presto Indus., Inc*. 709 F.2d 1109, 1118 (7th Cir. 1983) ("threshold determination in any case involving an assertion of the work product privilege ... is whether the materials sought to be protected from disclosure were in fact prepared in

anticipation of litigation"); *cf.* Fed. R. Civ. P. 26(b)(4)(D) (restricting discovery of "facts known or opinions held by an expert who has been retained … by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial").

State Farm makes two arguments in an effort to void Electrolux's work product protection. First, State Farm argues that Electrolux employs a double standard in that Electrolux contends that State Farm's fire scene investigation materials are not protected from disclosure; in effect, State Farm pleads, without legal support, that what is good for the goose is good for the gander. State Farm's assertion is based on a flawed premise, because Electrolux and State Farm are in entirely different positions when each conducts its initial fire scene investigations. To switch metaphors, State Farm is comparing apples to oranges.

Unquestionably, as the insurer of the damaged property, it is an integral part of State Farm's business to conduct an *insurance*-related investigation and handle the claims of its insured if deemed covered. Claims handling is a business, not a legal, function, and the results of State Farm's claims investigation are open to discovery. *See Coltec Indus. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 375 (N.D. Ill. 2000) ("claim information and evaluation of exposure" are not protected work product because insurers "evaluate claims and exposure in the ordinary course of business"); *Harper v. Auto-Owners Ins. Co.* 138 F.R.D. 655, 662 (S.D. Ind. 1991) ("[m]ost courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and not work product"). Indeed, this principle is so established that a federal court in Maryland recently sanctioned an insurance company that attempted to withhold claims handling documents from disclosure. *Charter Oak Fire Ins. v. Am. Capital, Ltd.*, C.A. No. DKC 09-100, 2013 U.S. Dist. LEXIS 180504, *36 (D. Md. Dec. 24,

3

2013) (sanctions imposed; insurer's claims handling files were discoverable because insurer did not "sustain its burden to show that the disputed material was not prepared primarily for the ordinary business purpose of adjusting insurance claims").

In contrast, Electrolux's sole role is that of an almost-certain litigation defendant. Electrolux's fire scene investigations are conducted by consulting experts "in anticipation of litigation," and the materials generated in the course of that investigation fall squarely within Rule 26(b)(3). *See Binks Mfg. Co.*, 709 F.2d at 1118-19 (7th Cir. 1983) (a document is prepared in anticipation of litigation if "the document can fairly be said to have been prepared or obtained because of the prospect of litigation").

State Farm's authorities actually support Electrolux. *In re Air Crash at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515 (N.D. Ill. 1990) (State Farm Mem. at 5), involved a defendant's broad assertion of privilege and work product. The court explained that the work product doctrine protects documents concerning defense "preparation or strategy, or the appraisal of the strengths or weaknesses of [the defense], or the activities of the attorneys in preparing their case, or is at least 'primarily concerned with legal assistance' and not simply underlying evidence." *Id.* at 520. Further, the work product doctrine "clearly protects party, and not just attorney, preparation." *Id.* The court applied these principles in holding that documents created and maintained with the intention that they be kept confidential from adversaries were immune from disclosure, whereas documents that were never intended to be confidential, such as documents produced to the government in an NTSB investigation or which otherwise had no indication that the defendant intended them to be kept confidential from adversaries, were not protected. *Id.* at 520-24. Because Electrolux's fire scene investigators are deployed in response

4

to a notice of likely litigation (particularly given State Farm's systematic subrogation litigation against Electrolux), their working papers are protected from discovery.

State Farm seeks to rely on prior proceedings in this litigation by contorting an out-of-context snippet of Magistrate Judge Gilbert's statement during a May 7, 2013 hearing. Addressing *Electrolux's* motion to compel and right to discover State Farm's insurance investigations of the fire scenes at issue, the Court stated that State Farm's material "is discoverable." (State Farm Mem., Ex. E, p. 30; *see also id.* at 79 (State Farm's fire scene "investigator's knowledge is discoverable").) The Court's statement conforms with the above-cited case law holding that claims investigation is an integral insurer business function and thus is not immune from disclosure. In attempting to turn Magistrate Judge Gilbert's statement about State Farm's documents against Electrolux, State Farm fails to inform the Court that Judge Gilbert did not address whether the investigatory materials of Electrolux's non-testifying consultants are protected work product (the issue was not even involved in the hearing), and as such that statement has no bearing on State Farm's contention.

Second, State Farm argues that Electrolux improperly has claimed work product protection over specified materials held by consulting experts, including photographs and diagrams of fire scenes and investigators' interview notes. State Farm wrongly claims that these materials "contain[] purely factual information." (State Farm Mem. at 4.) All of these materials, however, inherently reflect the mental impressions of Electrolux's consulting investigators. The work product doctrine is intended to protect just such defense thought processes and mental impressions. *See, e.g., Sandra T.E. v. Berwyn School Dist.,* 600 F.3d 612, 622 (N.D. Ill. 2000) (work product protection applies when documents "can fairly be said to have been prepared or obtained because of the prospect of litigation"); *see also Board of Trustees of Leland Stanford Jr.*

*Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 528, 530-31 (C.D. Cal. 2008) (work product doctrine protects opinion of corporation's employee who reviewed documents and offered opinion as part of litigation defense effort); *Strougo v. Bea Assocs.*, 199 F.R.D. 515, 522-23 (S.D.N.Y. 2001) (document containing financial information prepared by company employee as part of defense effort after litigation commenced was protected work product).

Here, for example, which photographs Electrolux's investigators chose to take and retain reflects their views as to what is important to Electrolux's defense. *See, e.g.*, *Vardon Golf Co. v. BBMG Golf*, 156 F.R.D. 641, 647 (N.D. Ill. 1994) (a party's photographs are protected work product because the decision concerning which pictures to take reflects the party's defense thought processes and attorney mental impressions or opinions). State Farm's citation to *Domanus v. Lewicki,* 08 C 4922, 2012 WL 6568227, at **10-11 (N.D. Ill. Dec. 14, 2012) (State Farm Mem. at 6), is misleading; the case addresses attorney-client privilege, not work product, and does not involve a party's defense investigation.

Likewise, interview notes taken by Electrolux's investigators, even of their interviews with State Farm's own investigators, necessarily reveal potential defense strategy and mental impressions, and thus are work product. Dispositively, these are not transcripts of conversations, but the notes of what a member of the defense team believed to be important, and "are likely to be permeated with the investigator's own impressions and possibly even attorney theories or strategy, and are therefore protected from disclosure." *Mitchell Eng'g v. County of San Francisco,* C 08-04022 SI, 2010 U.S. Dist. LEXIS 53958, at *5 (N.D. Cal. May 6, 2010) (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), *Upjohn Co. v. U.S.*, 449 U.S. 383, 399 (1981)); *see also Treat v. Tom Kelly Buick Pontiac GMC, Inc.*, 1:08-CV-173, 2009 U.S. Dist. LEXIS 46218, at *19 (N.D. Ind. June 2, 2009) (work product doctrine generally applies to an

6

investigation undertaken in anticipation of litigation, whether it is conducted by counsel or by other agents); *Peterson v. Wallace Computer Servs., Inc.,* 984 F. Supp. 821, 824 (D. Vt. 1997) (notes and memoranda from investigation by human resources director and plant manager constituted work product prepared in anticipation of litigation).

For these reasons, State Farm's motion to compel the working papers of Electrolux's non-testifying consulting experts, which were created in the course of responding to a claims or notices of expected claims by State Farm, should be denied.

### B. Dr. Morrison is a Consulting Expert, and His Working Papers Are Confidential Work Product

State Farm seeks to compel Electrolux to produce certain working papers of a consulting expert Electrolux retained in connection with insurer subrogation litigation. Specifically, in 2002, due to subrogation claims and lawsuits insurers were bringing against Electrolux based on alleged dryer defects – similar to State Farm's claims here – Electrolux retained Dr. Trey Morrison as a consulting expert to aid the company's defense efforts. Electrolux continues to use Dr. Morrison as a consulting expert, and he has not been identified as a testifying expert (Electrolux's expert designations and reports are not due until August 21, 2014).

State Farm seeks to compel the production of Dr. Morrison's "testing documentation and analysis" (State Farm Mem. at 8) from 2002. These data have been maintained as confidential consulting expert work product at all times. State Farm is not entitled to discover Dr. Morrison's working papers because they are protected work product, prepared as part of the defense effort in anticipation of litigation. *See, e.g.*, *Ludwig*, 2003 U.S. Dist. LEXIS 17789, at **4, 7 (adverse party not entitled to discover consultant work product; "[t]here can be no serious dispute that these consultants were retained in anticipation of litigation" and that their work product is protected from discovery).

7

State Farm argues, in effect, that Electrolux's work product protections have been waived because (1) Dr. Morrison published papers disclosing *other information* derived from the same period of work and (2) Electrolux did not list Dr. Morrison's work papers on a privilege log. (State Farm Mem. at 10-13.)

As to the first, in 2004, Dr. Morrison published two papers about lint accumulation in dryers, which articles were informed by certain work he did in 2002 involving Electrolux. As is self-evident from the fact that State Farm is seeking the underlying working papers and data, however, Dr. Morrison's published papers – which Electrolux has produced to State Farm – did not disclose the "testing documentation and analysis" State Farm seeks. This confirms that Electrolux has held that information as confidential work product for over a decade. The law is clear that the disclosure of a portion of a consultant's work does not waive the work product protection with regard to other of the consultant's information that has been maintained in confidence from the adversary. *See Ludwig*, 2003 U.S. Dist. LEXIS 177789, at \*\*8-9 (the work product "protection is not subject to waiver" by partial disclosure; "even if such information can be waived if disclosed ... that waiver is limited to material disclosed and does not apply to material that remains undisclosed"); *Hollinger Int'l, Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 511, 515-18 (N.D. Ill. 2005) (where a non-testifying expert disclosed certain facts, but maintained the confidentiality of other underlying opinion work, undisclosed portion remains immune from discovery); *id.* at 522 ("courts have generally held that partial disclosure of a non-testifying expert's work product does not waive a party's right to withhold protection of the expert's undisclosed work product"); *see also Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012) ("disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character") (internal citations omitted).

As to the second, as a matter of law and practice, Electrolux is not required to log the post-litigation working papers of its consulting experts.[1] *See Ludwig*, 2003 U.S. Dist. LEXIS 17789, at *10 ("there is no express requirement that a privilege log be produced" with respect to a consultant's work papers, which "are exempt from discovery").

In any event, even if Electrolux were required to log the post-litigation work of its consulting experts, the remedy would be to order Electrolux to provide a proper privilege log, not the draconian remedy of stripping Electrolux of its work product protections, particularly given that Electrolux's expert disclosures are not due for over seven months. *See American Nat'l Bank & Trust Co. v. Equitable Life Assur.*, 406 F.3d 867, 879 (7th Cir. 2005) (Magistrate Judge abused his discretion by ordering waiver of privilege due to defects in privilege log, absent bad faith finding); *Pem-America, Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 1377 (JFK) (RLE), 2007 U.S. Dist. LEXIS 80548, at *5 (S.D.N.Y. Oct. 31, 2007) ("only flagrant violations of [discovery] rules should result in a waiver of privilege"); *Novelty, Inc. v. Mountain View Marketing*, 265 F.R.D. 370, 381 (S.D. Ind. 2009) (ordering waiver of privilege only after party showed "cavalier and callous disregard" by ignoring prior order to produce privilege log).

Moreover, State Farm's motion is premature. If Electrolux later chooses to designate Dr. Morrison as a testifying expert, then Electrolux will be bound to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B)(i-iii) (party must disclose "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them" and "any exhibits that will be used to summarize or support them"). Even then, Electrolux would have to produce only those

---

[1] Dr. Morrison was retained in 2002, prior to State Farm's initiation of the instant litigation, but *after* insurers had begun to assert allegations similar to those State Farm is asserting here.

9

documents that were "considered" in forming the opinions or "used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(ii-iii). Electrolux, however, has not designated Dr. Morrison as a testifying expert – a bridge it need not cross for seven months – so the issue is premature.

## II. ELECTROLUX DOES NOT "CONTROL" DOCUMENTS THAT ALLEGEDLY ARE IN THE POSSESSION OF A SISTER COMPANY

State Farm seeks to compel Electrolux to produce a 2006 study that allegedly was conducted by or for a separate and distinct Australian corporate entity, Electrolux Home Products Pty Ltd. ("Electrolux Australia"). Defendant Electrolux, a U.S. corporation, and Electrolux Australia are wholly owned by the same corporate parent, AB Electrolux, a publicly-traded Swedish company. State Farm presumes that, based solely on the fact that Defendant Electrolux and Electrolux Australia have common ownership, Electrolux as a matter of law has control over the document asserted to be in the possession of Electrolux Australia. State Farm's argument is contrary to settled law.

As reflected in the 2012 Annual Report of AB Electrolux (State Farm Mem., Ex. I at 69), AB Electrolux owns more than 40 wholly or almost wholly owned corporations throughout the world, including Defendant Electrolux (in the United States) and Electrolux Australia. Significantly, that is the entirety of the record State Farm has put forth on this issue.

State Farm's argument ignores altogether the corporate form and the presumptive separateness of Electrolux from its Swedish owner and, in turn, AB Electrolux's Australian subsidiary. The corporate form should be "recognized and upheld, unless specific, unusual circumstances call for an exception." *Musco Corp. v. Qualite, Inc.*, 92 C 591, 1994 U.S. Dist. LEXIS 9799, at *11 (N.D. Ill. July 14, 1994).

State Farm not only fails to offer facts of "unusual circumstances," it has not come forward with *any* facts to attempt to defeat the strong presumption in favor of the corporate form.

10

For a U.S. company to be required to produce documents held by a foreign parent or affiliate requires a persuasive showing that "the U.S. corporation has the requisite degree of control over the documents sought." *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 07-CV-6509, 2009 U.S. Dist. LEXIS 22948, at **6-7 (N.D. Ill. Mar. 23, 2009). The degree of control is determined by the "closeness of the relationship between the entities." *Id.* "[T]he Seventh Circuit has warned against an overly expansive reading of the term 'control,' noting that 'the fact that a party could obtain a document if it tried hard enough ... does not mean that the document is in its possession, custody, or control.'" *In re Subpoena to Huawei Techn. Co.*, 720 F. Supp. 2d 969, 976-77 (N.D. Ill. 2010) (quoting *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993)); *see also id.* at 976 n.10 (considering cases construing "possession, custody or control" under both Rules 34 and 45 because "courts have consistently held that Federal Rules of Civil Procedure should be read *in pari materia* with each other"). To evade the corporate form, courts examine a variety of factors, including the "exchange or intermingling of directors," "exchange of documents in the ordinary course of business," the non-party's connection to the issue in the case, the non-party's involvement or stake in the litigation, and the subsidiaries independence. *See, e.g., id.* at 977; *Flavel v. Svedala Indus., Inc.*, No. 92 C 1095, 1993 U.S. Dist. LEXIS 18730, at *13 (E.D. Wis. Dec. 13, 1993). The record is completely devoid of any such prerequisite facts.

Even when some factors may weigh in favor of the party seeking discovery (*e.g.*, subsidiary is wholly owned, parent and subsidiary engaged in some joint marketing and exchanged some documents in the ordinary course of business), a moving party "fail[s] to meet its burden, and its motion to compel [should be] denied," where, as here, the party seeking discovery has "produced no evidence … that [the parent] would give [the subsidiary] any access

11

to the documents requested by the subpoena"[2]; there is "no evidence that [the companies] exchange or intermingle directors, or that [the parent] controls [the subsidiary's] directors, officers, or employees" or of the extent, if any, of the parent's involvement with the subject matter of the lawsuit. *In re Subpoena to Huawei Tech. Co.*, 720 F. Supp. 2d at 977-78. Thus, even if there were evidence of "a close relationship" between Electrolux and AB Electrolux (and, in turn, Electrolux Australia) – and State Farm has not put forth a scintilla of such evidence – that still would be inadequate to sustain State Farm's burden here. *Id.*; *see also Camden Iron & Metal v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991) (movant bears burden).

Furthermore, the cases State Farm cites (State Farm Mem. at 7-8) do not remotely advance its position, but merely state these same basic principles. *See In re Uranium Antitrust Litig.*, 480 F. Supp. 1138 (N.D. Ill. 1979) (based on detailed factual review, concluding that (a) proof was "too scanty" to establish that one defendant, a U.S. subsidiary, "controls" documents held by foreign parent (*id.* at 1153), but (b) other defendants had ignored the corporate form and thus requiring production of documents held by foreign affiliates (*id.* at 1151)); *Mt. Hawley Ins. Co. v. Felman Production, Inc.*, 269 F.R.D. 609, 619 (S.D. W. Va. 2010) (subsidiary required to produce documents held by parent where parent operated the subsidiary "as if it is their sole proprietorship"); *Novelty, Inc.*, 265 F.R.D. at 377-78 (company required to produce documents *from its own employees* located overseas); *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919-20 & n.2 (S.D.N.Y. 1984) (plaintiffs sought documents that defendant used in its day-to-day business operations held by corporate parent; "documents and records that a corporation requires in the normal course of business are presumed to be in its control"). State

---

[2] Here, of course, there is even a further step, as State Farm asserts that the documents at issue are held by one of AB Electrolux's separate subsidiaries, Electrolux Australia.

Farm has done nothing to meet its burden to prove that Electrolux has control over documents allegedly held by a foreign sister company.

Nor has State Farm made any showing at all to support the notion that a "study" apparently undertaken by a third party would be admissible against Electrolux, or that it could lead to the discovery of admissible evidence. In this regard too, State Farm fails to meet the basic requirements of Rule 26.

## **CONCLUSION**

For all the foregoing reasons, State Farm's motion to compel should be denied in its entirety.

ELECTROLUX HOME PRODUCTS, INC.

Dated: January 13, 2014  By:  *s/ Michael J. Summerhill*

Michael J. Summerhill (ARDC No. 6274260)
Matthew J. Kramer (ARDC No. 6283296)
Salvador A. Carranza (ARDC No. 6292519)
FREEBORN & PETERS LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
Tel: (312) 360-6382
Fax: (312) 360-6594
msummerhill@freebornpeters.com
mkramer@freebornpeters.com
scarranza@freebornpeters.com

Robert H. Shulman
David B. Killalea
Manatt, Phelps & Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, DC  20005
Tel: (202) 585-6500
Fax: (202) 585-6600
rshulman@manatt.com
dkillalea@manatt.com

Cheryl M. Nicolson
Melissa L. Yemma
Nicolson Law Group
1400 N. Providence Road
Suite 4045
Media, PA 19063
Tel: (610) 891-0300
nicolson@nicolsonlawgroup.com
yemma@nicolsonlawgroup.com

*Counsel for Defendant Electrolux Home Products, Inc.*

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that, on January 13, 2014, he caused a copy of the foregoing pleading to be served upon the following counsel of record through this Court's CM/ECF system.

Terrence R. Joy
Grotefeld Hoffmann Schleiter Gordon & Ochoa LLP
150 South Fifth Street
Minneapolis, Minnesota 55402
(612) 564-4884
tjoy@ghlaw-llp.com

William J. Hoffman
Jonathan J. Tofilon
Michael J. Scola
Grotefeld Hoffmann Schleiter Gordon & Ochoa LLP
407 South Third Street
Suite 200
Geneva, Illinois 60139
bhoffman@ghlaw-llp.com
jtofilon@ghlaw-llp.com
scola@ghlaw-llp.com

                                                                        /s/ Michael J. Summerhill